UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ANTHONY GRONOWICZ,

                                                 Plaintiff,

          -against-

BRONX COMMUNITY COLLEGE,

                                                 Defendant.

**DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

06 Civ. 13076 (JSR)

------------------------------------------------------------------------ x

        Pursuant to Local Rule 56.1 of the Civil Rules of United States District Court for the Southern District of New York, defendant submits this Statement of Material Facts as to which it contends there are no genuine issues to be tried:

**Preliminary Facts**

        1.     Plaintiff, who self-identifies as an individual over the age of 40, was employed as an adjunct lecturer at Bronx Community College ("BCC") from the spring of 1999 to the summer of 2004. See Plaintiff's Federal complaint, Exhibit "A."[1];

        2.     Plaintiff claims that he has sought several "promotions" to a full-time, tenure track, position of professor within BCC but was denied these promotions on account of his age, in violation of the Age Discrimination Employment Act ("ADEA"), and the State and City Human Rights Laws. See Plaintiff's Federal complaint ("Compl."), Exhibit "A." Plaintiff also alleges a claim of intentional infliction of emotional distress under New York law. See id.

---

[1] Unless otherwise indicated, all references to "Exhibits" are to the exhibits annexed to the declaration of Carolyn Walker-Diallo, dated May 21, 2007.

3. Plaintiff began working as an adjunct lecturer in BCC's History Department in the Spring of 1999. See Compl. ¶ 10.

4. During his time as an adjunct lecturer at BCC, plaintiff received Satisfactory evaluations from the full-time faculty and students. His reappointment as an adjunct lecturer and these evaluations did not ascertain whether or not plaintiff would be a good candidate for a full-time tenure track position. See Statement of the Board of Higher Education on Academic Personnel Practice in the City of New York ("Statement of the Board of Higher Education"), Exhibit "Z." ("the decision to reappoint and the decision to tenure are two separate and distinct acts.")

**General Qualifications**

5. To become a tenured-track instructor or Assistant Professor at BCC, a candidate must have, among other things, a "demonstrated satisfactory qualities of personality and character, ability to teach successfully, interest in productive scholarship or creative achievement and willingness to cooperate with others for the good of the institution." See City University of New York Board of Trustees By-Laws ("CUNY By-Laws"), Section 11.7, Exhibit "X." The faculty "sets standards for its own qualifications, ethics and performance." Statement of the Board of Higher Education, Exhibit "Z."

6. There are three levels of tenure-track positions at the City University of New York ("CUNY"), of which BCC is a part: Instructor, Assistant Professor, and Associate Professor. See CUNY By-Laws, Exhibit "X."

7. An Instructor is not required to have a doctorate degree and must only possess an " appropriate master's degree from an accredited institution, or active progress toward a doctorate degree." See id., CUNY By-Laws, Section 11.7, Exhibit "X."

8. An Assistant Professor must not only have demonstrated satisfactory qualities of personality and character, and a willingness to cooperate with others for the good of the institution, but he or she must have "evidence of significant success as a teacher" and possess a Phd. See id.

9. An Associate Professor must not only possess the qualifications of an Assistant Professor, but must also "possess a record of significant achievement in his/her field or profession" and "evidence of his/her continued growth and of continued effectiveness in teaching. Longevity and seniority [is not] sufficient" for promotion into this title. See id.

10. Thus, depending on the experience and educational background, a successful candidate can be hired into a full-time tenure track position as an Instructor, Assistant Professor or an Associate Professor.

**The History Department's Recruitment Process**

11. In 2002, the History Department's Recruitment process includes the following steps: (1) the department's search committee reviewed the resumes and determined who were the qualified candidates; (2) the entire full-time faculty reviewed the resumes of the qualified candidates who were invited for an interview; (3) the candidates selected for the interview are invited for an interview session and were asked pre-determined questions; (4) the full-time faculty discusses the candidates and then a secret ballot is used to determine which candidates will be recommended to the President for hire; and (5) the President approves the recommendation and extends an invitation to the successful candidate. See Gutwirth Dep. Tr. at 18:6-19:10, Exhibit "C"; BCC's Response to Plaintiff's EEOC Charge of Discrimination, Exhibit "V."

## I. Spring 2002 Application

12.     In the Spring of 2002, BCC's History Department began searching for a full-time tenure track History Instructor, Assistant Professor or Associate Professor to teach in the areas of African-American History, American History, The Modern World and Human Geography.  See 2002 Job Advertisement, Exhibit "G."

13.     Five individuals applied for the position: Leonard Branche, Leigh Benin, Kwame Botwe-Asamoah, Jamie Jaywann Wilson, and plaintiff.  See Fall 2002 Interview Schedule, Exhibit "H." Jamie Jaywann Wilson, an individual under the age of 40, and plaintiff were selected as two finalists.  See Jamie Jaywann Wilson resume, Exhibit "I"; plaintiff's resume, Exhibit "I."

14.     Jamie Wilson was eventually hired as an Instructor to fill this vacancy.

15.     Jamie Wilson had experience teaching African-American History, had completed his comprehensive and oral examinations, and was writing his dissertation, the final step necessary to obtain his PhD. See Jamie Wilson's resume, Exhibit "I"; Gutwirth Dep. Tr. at 38:22-39:4, Exhibit "C."

### A.     Class Observation

16.     As part of the process, the finalists, which included plaintiff and Jamie Wilson were required to teach a class in front of the entire faculty and to interview with the entire faculty.  They were both given information on what needed to be covered in the class observation.  See Gutwirth Dep. Tr. at 22:15-18, 33:4-8, Exhibit "C"; Declaration of Dr. Wach, ¶ 6, dated May 17, 2007, Exhibit "F"; Declaration of Dr. Bonelli, ¶ 7, dated May 17, 2007, Exhibit "D."

17.     Dr. Gutwirth, the Chairperson of the Department, testified that during the classroom observation, plaintiff did not cover the material that he was expected to cover as he

"veered off on his own" and discussed material that was "not germane to" the lesson. See Gutwirth Dep. Tr. at 22:17-25, Exhibit "C."

18. Dr. Harold Wach, a full-time faculty member, observed plaintiff teach the same class and remembers that plaintiff's lesson presentation was not "well-structured and suffered heavily from lack of focus," and that plaintiff focused on issues that were not "relevant" to the lesson. See Declaration of Dr. Harold Wach, ¶ 7, dated May 17, 2007, Exhibit "F."

19. Dr. Vincent Bonelli, a member of the Search Committee, and a full-time faculty member, remarks that plaintiff "got distracted" during his class observation and "wandered away" from the subject matter of the lesson. See Declaration of Dr. Vincent Bonelli, ¶ 9, dated May 17, 2007, Exhibit "D."

20. In contrast, a majority of the faculty members characterized Jamie Wilson's class observation as "fabulous," "engaging" and "lively," as he taught the lesson at the level of the students, had a tremendous rapport with the students, was clear about what he wanted them to learn, and covered all of the material. See Gutwirth Dep. Tr. at 31:25-34:22, Exhibit "C."; Dr. Wach's Declaration, dated May 17, 2007, ¶ 9, Exhibit "F"; Dr. Finkelstein's Declaration, dated May 18, 2007, ¶¶ 4, 7, Exhibit "E."

21. Thus, the faculty determined that he had a better rapport with the students because of his personality and teaching style. See id.

**B.     Interviews**

22. As for plaintiff's interview, faculty members believed that plaintiff did not perform well during the question and answer session. Dr. Gutwirth testified that plaintiff

> didn't answer many of the questions that were asked, but "spoke at inordinate length…on the book he was…writing." She further stated that "although several people attempted to move him to other

questions, his interview was dominated by the whole project of the book that he was undertaking."

See Gutwirth Dep. Tr. at 25:4-7, Exhibit "C."

23. At her deposition, Dr. Gutwirth testified that Jamie Wilson's interview was "wonderful" and that it was different from plaintiff's in that it was "extremely engaging, extremely open, [Mr. Wilson] had a sense of humor, answered all the questions, was quite captivating and also gave a sense of really understanding [BCC's] students." See Gutwirth Dep. Tr. at 33:24-34:22, Exhibit "C."

24. Dr. Bonelli recalls that Mr. Wilson interviewed was "exceptionally well." See Dr. Vincent Bonelli declaration, ¶ 8, dated May 17, 2007, Exhibit "D."

25. Dr. Finkelstein also recalls that Mr. Wilson performed well during the interview as he was "enthusiastic" and "well prepared." See Finkelstein Declaration, Exhibit "E", ¶ 4, dated May 18, 2007.

26. Thus, based upon Jamie Wilson's outstanding performance Mr. Wilson was ultimately hired as an Instructor in BCC's History Department. Plaintiff admitted that Mr. Wilson was qualified for the position. See Pl. Dep. Tr. at 47:5-6, Exhibit "B."

## II. Plaintiff's Subsequent Applications.

27. After plaintiff's unsuccessful interview and class observation, plaintiff reapplied for tenure-track positions on four other occasions. See Letters from plaintiff to Shelley B. Levy, Director of Human Resources, dated March 13, 2003, December 29, 2004, March 4, 2005, and September 28, 2005, Exhibit "J."

28. Plaintiff's application materials were reviewed each time they were submitted. After receiving plaintiff's application materials, the department met to discuss the applicants. See Gutwirth Dep. Tr. at 43:8-16, Exhibit "C."

29. The faculty reviewed plaintiff's last presentation and interview, and remembered that he had not performed well. See id.

30. In addition, based upon experiences with plaintiff, some faculty members believed that he "would not be a collegial member of the department." See id; See Bonelli Declaration, ¶ 12, Exhibit "D."

31. Thus, while Dr. Gutwirth believed that "he could teach the courses," she did not believe that he would be a good faculty member, as he was conspiratorial, often seeing dark things in people's motives." See id. at 46:19-20. Dr. Gutwirth testified that on one occasion, plaintiff informed her that the administration was "cooking up" a "devious plan." See id. at 48:3-8.

32. Thus, as there are "different standards for adjuncts…[than for] full time faculty," the faculty believed that plaintiff did not meet the standards to become a full-time faculty member. See Gutwirth Dep. Tr. at 45:20-22, Exhibit "C."; See also CUNY By-Laws, Exhibit "X."

33. Plaintiff also failed to abide by CUNY policy. By letter dated September 16, 2003, Dr. Gutwirth informed plaintiff that his failure to apprise her that he was scheduled to teach at three CUNY campuses "created a difficult situation not only for the department, but for the college as well." See Letter dated September 16, 2003, Exhibit "Z." Dr. Gutwirth also reminded plaintiff that his failure to follow the appropriate procedure could "jeopardize his appointment as an adjunct lecturer." See id. Plaintiff did not request a waiver of this requirement.

34. Based upon plaintiff's previous substandard performance, his continued inability to get along with the full-time faculty members, and his failure to adhere to CUNY's

rules and regulations, plaintiff was informed that his application would not be forwarded for further consideration. See Letters from Dr. Gutwirth to plaintiff dated May 27, 2003, February 7, 2005, May 2, 2005 and May 6, 2006, Exhibit "K."

35. The individuals who were ultimately selected for the positions were qualified individuals for these tenure track positions. See Dr. Jordi Getman-Eraso's Resume, Exhibit "M"; Dr. Christopher Grenda's Resume, Exhibit "N"; Dr. Wladyslaw Roczniak, Exhibit "P"; Dr. Tamar Rothenberg, Exhibit "P"; and Dr. Robert Maryks, Exhibit "Q."

### VI. Plaintiff's Other Applications

36. At the same time that plaintiff was applying for full-time tenure track positions at BCC, he was also applying unsuccessfully for full-time tenure track positions at other colleges and universities. At least five (5) institutions also did not offer plaintiff a full-time tenure track position:

- the City College of New York,
- Empire State College,
- Lehman College,
- Queens College, and
- York College

See Plaintiff's Job Hunt, Exhibit "T."

### Administrative Charge And Suit

37. Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on March 24, 2006. See EEOC Charge of Discrimination, Exhibit "U."

38. BCC responded to the charge on June 23, 2006. See BCC's response to plaintiff's SDHR complaint, Exhibit "V."

39. The EEOC sent plaintiff a "Right to Sue" letter on August 15, 2006. See "Right to Sue" letter, Exhibit "W."

40. The Right to Sue Letter provided that only his September 28, 2005 application was timely. See id.

41. Plaintiff commenced this federal lawsuit on or about November 8, 2006. See Plaintiff's Complaint, Exhibit "A."

**Conclusion**

42. In short, plaintiff believes that he has not been given a full-time tenure-track position in the History Department of BCC on account of his age because, according to plaintiff, if the successful candidates are "40 and [he's] 60, that's sufficient evidence." See Pl. Dep. Tr. at 46:24-47:6, 49:12-13 Exhibit "B."

Dated: New York, New York
       May 21, 2007

By: 

MICHAEL A. CARDOZO
Corporation Counsel of the
 City of New York
Attorney for Defendant
100 Church Street, Room 2-140
New York, New York 10007
(212) 788-0868

Carolyn Walker-Diallo (CW 9022)
Assistant Corporation Counsel